**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SHAUN A. JOHNSON, KATHERINE E. JOHNSON, <br><br> *Plaintiffs,* <br><br> v. <br><br> KEITH ELLISON, *in his official capacity as* Attorney General for the State of Minnesota, <br><br> BROOKE CUNNINGHAM, M.D., *in her official capacity as* Commissioner of the Minnesota Department of Health, <br><br> AND <br><br> FAIRVIEW HEALTH SERVICES d/b/a M Health Fairview, <br><br> *Defendants.* | Civil Case No.: <br><br> **COMPLAINT FOR DAMAGES, AND INJUNCTIVE AND DECLARATORY RELIEF** |

## INTRODUCTION

1. Shaun and Katherine Johnson need up-to-date access to their 15-year-old daughter's medical records because she has a serious lifelong condition that requires frequent monitoring. Fairview Health Services, however, insists that Minnesota custom or law forbids it from sharing contemporaneous, electronic access with the Johnsons. According to Fairview, once a child turns 12, Minnesota custom or law protects the minor's record even from her parents

1

and medical decisionmakers without the minor's consent—in all cases whatsoever. Meanwhile, federal law unequivocally requires that any covered provider, including Fairview, must provide the Johnsons with access to these records, except in very limited situations not present in this case. This case presents the straightforward question of which law prevails.

2.      Federal law, which requires providing full access to medical records in "the form and format" that is requested to the Johnsons, prevails over any contrary provision of Minnesota's custom or law that restricts such access further. As a result, Minnesota custom or law is pre-empted to the extent that it forbids disclosure required by federal law. Fairview, and indeed any healthcare provider in Minnesota, must therefore comply with federal law on this point.

3.      Further, because Fairview has acted pursuant to state custom and/or law, all defendants have unlawfully interfered with the Johnsons' 14th Amendment right to care, custody and management of their children. Indeed, defendants have frustrated the Johnsons' liberty interest in deciding the appropriate care for their children. Fairview's refusal to provide the Johnsons with full access to their daughters' electronic medical records portal therefore is action under color of state authority and violates the 14th Amendment's protections as well.

4. Alternatively, regardless of pre-emption and contrary to Fairview's position, Minnesota law tracks federal law and requires giving the Johnsons full access to their daughter's medical records. As the parents of a minor seeking routine medical care, the Johnsons are entitled to the same access as their child. Fairview must share these records with the Johnsons for this reason as well.

## PARTIES

5. Plaintiff Shaun A. Johnson is a natural person and resident of the District of Minnesota.

6. Plaintiff Katherine E. Johnson is a natural person and resident of the District of Minnesota.

7. The Johnsons are married, and have two minor daughters, J. and L.

8. J. and L. are between 12 and 18 years of age.

9. Defendant Keith Ellison is the Attorney General of Minnesota. Defendant Ellison is responsible for administering and enforcing Minnesota's Health Records Act and is sued in his official capacity.

10. Defendant Ellison is responsible for upholding the validity of Minnesota state law when it is challenged, such as through pre-emption.

11. Defendant Brooke Cunningham, M.D., is the Commissioner of the Minnesota Department of Health. Defendant Cunningham is responsible for administering and enforcing Minnesota's Health Records Act and is sued in

her official capacity. Defendants Ellison and Cunningham are referred to herein as the "State Defendants."

12. Defendant Fairview Health Services is a Minnesota nonprofit corporation that, upon information and belief, receives substantial federal funds.

13. Defendant Fairview appears to be doing business as M Health Fairview.

14. Accordingly, in the event that M Health Fairview is deemed to be a separate legal entity from Fairview Health Services, M Health Fairview should be treated as an additional or alternative Defendant. Regardless, one or both of these defendants will be referred to herein as "Fairview Health."

## JURISDICTION AND VENUE

15. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, 42 U.S.C. § 1983, the Supremacy Clause, U.S. Const. art. VI, cl. 2, and the Fourteenth Amendment's Due Process Clause, U.S. Const. Amend. XIV, sec. 1.

16. This Court has the authority to grant an injunction and declaratory judgment in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

17. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2), because all Defendants reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

18. Shaun A. Johnson and his wife Katherine E. Johnson (Plaintiffs) have two daughters, J., aged 15, and L., aged 13.

19. Since the time their daughters were born, the Johnsons have had access to medical records for the care their daughters received at Fairview Health by means of a MyChart electronic medical records portal.

20. Through the end of 2021, the Johnsons' daughters' primary care physicians were all located at Fairview facilities, and were all employed by or affiliated with Fairview.

21. In 2022, for reasons of geographic convenience, the Johnsons switched their daughters' primary care physician to a doctor affiliated with Metropolitan Pediatrics in Edina, Minnesota, Dr. Mari Daniels. Metropolitan Pediatrics is not part of nor affiliated with Fairview.

22. At J.'s annual checkup on December 6, 2023, Dr. Daniels expressed concern about her height and referred her to an endocrinologist for bone imaging.

23. The bone imaging was conducted at Children's Minnesota in Minnetonka, Minnesota, on March 1, 2024. The imaging results ultimately led to a diagnosis of Turner syndrome with mosaicism.

5

24. Turner syndrome is a chromosomal disorder wherein some or all body cells are missing an X chromosome. Heart defects are one of the possible symptoms.

25. On October 10, 2024, J. had an appointment with Dr. Heba Al-Rayess, a pediatric endocrinologist with the M Health Fairview Discovery Pediatric Specialty Clinic in Minneapolis. The purpose of this appointment was to obtain a second opinion regarding J.'s diagnosis of Turner syndrome. This was the first time that either of the Johnsons' daughters had had an appointment at a Fairview facility or with a Fairview doctor since 2021.

26. On October 28, 2024, on the referral of Dr. Al-Rayess, J. had an appointment for an echo ultrasound with Dr. Raja Kishore at the M Health Fairview Pediatric Speciality Clinic – Explorer in Minneapolis.

27. The Johnsons first became aware of the problems with J.'s MyChart access at the time of her appointment on October 28, 2024. Katherine accompanied J. to the clinic on October 28, 2024. Katherine wanted to look at the doctor's notes from October 10, 2024, on MyChart and was unable to do so because her access to J.'s records on MyChart had been disabled.

28. When Katherine asked a Fairview nurse about viewing J.'s records on MyChart, Katherine was given a two-page "MyChart Proxy Access Request Form," and was told that the form needed to be completed and signed before MyChart access could be provided.

29.    A true and correct copy of this form as given to Katherine Johnson is attached hereto as **Exhibit A**.

30.    As is stated on the form, Katherine was told by the nurse that J. would need to meet with hospital staff out of the presence of her parents to confirm that she was freely consenting to grant full records access to her parents, and then she, a hospital representative, and one of her parents (the proxy) would need to sign, before the form would be accepted.

31.    Specifically, the form provides: "If you are a minor aged 12-17, your care team needs to be involved in giving you and your parent, or legal custodian, access to your MyChart. You can have full access to MyChart on your own. Your parent or legal custodian can also be given access with your permission. However, due to Minnesota confidentiality laws, this can only be granted at an office with a provider." **Exhibit A** at 1.

32.    Katherine consulted with Shaun by telephone. They declined to sign the form.

33.    The Johnsons have never submitted the MyChart Proxy Access Request Form for J.'s medical records.

34.    They believe that Fairview should not be interposing their daughter's consent, or Fairview's consent, as a precondition to their access to their daughter's routine medical records, including records pertaining to J.'s Turner syndrome diagnosis.

35.   The Johnsons have had no MyChart access to J.'s medical records at Fairview since October 28, 2024.

36.   J., likewise, has no access to her own MyChart records because she has no MyChart account of her own. Nor is it clear how she could obtain one.

37.   Fairview explains its policy on its website: Medical Record Restrictions for Minors 12+

38.   According to Fairview:

Parents or legal guardians are given full proxy access to MyChart records for children age 0-11. But under Minnesota law, minors ages 12 and older have the right to control the release of information related to pregnancy, STD, physical or sexual abuse, and substance abuse diagnosis or treatment.

If your child is between the ages of 12 and 17, you will be granted partial, limited proxy access to your child's medical record upon request unless your child chooses to allow you full access.
….
How do I get proxy access to MyChart for my older child?

According to Minnesota law, children ages 12 to 17 have the right to decide who has access to their medical records related to pregnancy, STD, physical and sexual abuse, and substance abuse diagnosis and treatment. Parents or guardians will have partial, or limited, proxy access excluding these areas unless your child specifically agrees to grant you full proxy access. Here is how the proxy access process works for children 12-17:

- Before your child turns 12, talk with your child's primary care provider about getting proxy access to your child's MyChart account.
- The process of granting proxy access has to be done as part of an in-person visit.
- Your child's doctor will talk with your child while you're out of the room about what proxy access means and

> whether your child wants to grant you full or partial proxy access.
>
> - If your child agrees to grant full access, your child and your provider will sign a consent form. Then, you are granted full proxy access to your child's medical record. If your child does not agree, you will receive only partial or limited proxy access.
> - If you don't complete this process before your child turns 12, it's OK. You can still follow the process above to get proxy access. Be aware, however, that until the consent form is signed, you will not have full access to your child's medical record.

(https://www.mhealthfairviewpeds.org/resources/medical-records.)

39.    A true and correct screenshot of this website is attached hereto as

**Exhibit B**.

40.    The Johnsons have been told by other parents that Fairview automatically disables parents' access to their child's MyChart account when the child turns 12.

41.    Thus, Fairview may have disabled the Johnsons' access to J.'s MyChart account when J. turned 12 on April 7, 2023.

42.    If so, the Johnsons did not notice until October 28, 2024.

43.    The Johnsons would have had no reason to notice, since J. was not obtaining healthcare at Fairview facilities in 2023, or in 2024 prior to October.

44.    In this regard, Fairview disabled the Johnsons' access to their younger daughter L.'s MyChart account after L. turned 12 on December 7, 2024.

45. The Johnsons still have the ability to obtain some medical records for J. at Fairview by completing a separate two-page form entitled, "Authorization for Release of Protected Health Information."

46. They sent such a request to Fairview in December 2024 and received a response by email about three weeks later, on December 28, 2024.

47. Fairview's responsive email included a link to a password protected pdf document.

48. The records that were made available by these means (the email and the pdf document) were less complete than what would have been available on MyChart.

49. Notably, full electronic medical records were not made available and cannot be made available by these means.

50. The Johnsons' access to J.'s electronic medical records on the MyChart portal is particularly important given J.'s diagnosis of Turner syndrome.

51. After confirming the diagnosis, J.'s doctors discovered that her heart was formed abnormally and should be monitored with regular imaging and medical treatment for the rest of her life.

52. Such images can only be accessed in electronic form, and the Johnsons do not have access to such records.

## RELEVANT LAW

### Minnesota's Health Records Act

10

53.    The Minnesota Health Records Act protects "patient rights" "regarding the treatment the patient receives and the patient's health record." Minn. Stat. § 144.292 subd. 1.

54.    "Except for minors who have received health care services under sections 144.341 to 144.347, in the case of a minor, patient includes a parent or guardian, or a person acting as a parent or guardian in the absence of a parent or guardian." Minn. Stat. § 144.291 subd. 2(g).

55.    Sections 144.341 to 144.347 list medical care for which a minor may give consent without a parent, but only apply to emancipated minors, and services concerning certain reproductive, mental health, and substance abuse issues, or reports concerning abuse.

56.    Even then, "[t]he professional may inform the parent or legal guardian of the minor patient of any treatment given or needed where, in the judgment of the professional, failure to inform the parent or guardian would seriously jeopardize the health of the minor patient." Minn. Stat. § 144.346.

57.    The Act prohibits any "provider, or a person who receives health records from a provider," from "releas[ing] a patient's health records to a person without" authorization. Minn. Stat. § 144.293 subd. 2.

58.    One type of authorization is "specific authorization in law." Minn. Stat. § 144.293, subd. 2(2).

59. This encompasses federal rules enacted under the Health Insurance Portability and Accountability Act (HIPAA). *See Schneider v. Children's Health Care*, 996 N.W.2d 197, 205 (Minn. 2023).

60. Concerning "patient access," "[u]pon request, a provider shall supply to a patient within 30 calendar days of receiving a written request for medical records complete and current information possessed by that provider concerning any diagnosis, treatment, and prognosis of the patient in terms and language the patient can reasonably be expected to understand." Minn. Stat. § 144.292 subd. 2.

**The Health Insurance Portability and Accountability Act (HIPAA)**

61. HIPAA generally forbids any covered entity from disclosure of an individual's protected health information (PHI). *See* 42 U.S.C. § 1320d *et seq.*

62. Fairview health is a "covered entity" for purposes of HIPAA.

63. The Standards for Privacy of Individually Identifiable Health Information (Privacy Rule), 45 C.F.R. parts 160 and 164, subparts A and E, however, establish the right of an individual, or a personal representative acting on the individual's behalf, to access the individual's medical records and other PHI about the individual. *See* 45 C.F.R. §§ 164.502(a)(2)(i), 164.524.

64. 45 C.F.R. § 164.524(a) says that "an individual has a right of access to inspect and obtain a copy of protected health information about the individual

in a designated record set, for as long as the protected health information is maintained in the designated record set[.]"

65.    And concerning electronic access to records, the "covered entity must provide the individual with access to the protected health information in the form and format requested by the individual, if it is readily producible in such form and format[.]" 45 C.F.R. § 164.524(c)(2)(i).

66.    An "individual" is the one who makes his or her own health decisions. A "covered entity must … treat a personal representative as the individual for purposes of this subchapter," subject to narrow exceptions. 45 C.F.R. § 164.502(g)(1).

67.    The Privacy Rule further provides that, "[i]f under applicable law a parent, guardian, or other person acting *in loco parentis* has authority to act on behalf of an individual who is an unemancipated minor in making decisions related to health care, a covered entity must treat such person as a personal representative under [the HIPAA Rules], with respect to [PHI] relevant to such personal representation … ." 45 C.F.R. § 164.502(g)(3)(i).

68.    In other words, HIPAA's Privacy Rule gives a parent or other personal representative presumptive access to their child's medical records. *See id.*

69.    There are narrow exceptions to the Privacy Rule, none of which are applicable here.

70.    First, the provider need not consider personal representatives as the individual when the individual is a "minor [who] consents to such health care service," and "no other consent to such health care service is required by law[.]" 45 C.F.R. § 164.502(g)(3)(i).

71.    Second, a parent might lack access where the "minor may lawfully obtain such health care service without the consent of the parent … and the minor, a court, or another person authorized by law consents to such health care service[.]" *Id.*

72.    Third, parents may "assent[] to an agreement of confidentiality between a covered health care provider and the minor with respect to such health care service." 45 C.F.R. § 164.502(g)(3)(i).

73.    Additionally, state law can sometimes create additional exceptions, but only when the "request for access is made by the individual's personal representative and a licensed health care professional has determined, in the exercise of professional judgment, that the provision of access to such personal representative is reasonably likely to cause substantial harm to the individual or another person." 45 C.F.R. § 164.524(a)(3)(iii); *see also* 45 C.F.R. § 164.502(g)(3)(ii) (requiring denial of access be consistent with § 164.524). Disclosures to prevent substantial harm must also be in accordance with state law. 45 C.F.R. § 164.502(g)(ii)(C).

74.    Finally, as is the case with all personal representatives, HIPAA allows, but does not require, an entity to "elect not to treat a person as the personal representative, provided that" "both" (1) the "covered entity has a reasonable belief that …the individual has been or may be subjected to domestic violence, abuse, or neglect by such person," or "treating such person as the personal representative could endanger the individual," and (2) the "covered entity, in the exercise of professional judgment, decides that it is not in the best interest of the individual to treat the person as the individual's personal representative." 45 C.F.R. 164.502(g)(5).

75.    Absent these narrow categories of exceptions, a covered entity must treat parents or other personal representatives as they would the patient— providing them with full access to the medical records. *See* 45 C.F.R. § 164.502(g)(1).

76.    HIPAA includes an express pre-emption provision, 42 U.S.C. § 1320d-7(a), which provides that the statute "shall supersede any contrary provision of State law," and lists certain exceptions that are not at issue here. A state law is "contrary" to HIPAA if a "covered entity or business associate would find it impossible to comply with both the State and Federal requirements." 45 C.F.R. § 160.202.

**The HIPAA Complaint and Dear Colleague Letter**

15

77.     On March 28, 2025, the Johnsons filed a complaint with the U.S. Dept. of Health & Human Services Office of Civil Rights.

78.     A true and correct copy of the Johnsons' complaint to HHS is attached hereto as **Exhibit C**.

79.     In their HHS complaint, the Johnsons argued that Fairview's policy for automatically denying parental access to their children's electronic medical records for children over 12 violated the HIPAA Privacy Rule. **Exhibit C** at 6-7.

80.     On July 30, 2025, OCR responded by letter and assigned the matter a transaction number.

81.     On September 7, 2025, the Johnsons filed a second OCR complaint because Fairview did nothing to restore their access to J.'s MyChart electronic medical records.

82.     A true and correct copy of the second OCR complaint is attached hereto as **Exhibit D**.

83.     On December 3, 2025, the U.S. Dept. of Health & Human Services Office of Civil Rights issued a dear colleague letter titled *The HIPAA Privacy Rule and Parental Access to Minor Children*.

84.     The HHS Dear Colleague Letter is attached as **Exhibit E**.

85.     In the letter, OCR noted that it "has become aware" "that there may be instances in which the parents of minor children are not receiving access to

their children's medical records to the extent required by the HIPAA Privacy Rule." *Id.* at 1.

86.    There is a presumption that "the Privacy Rule generally gives the parent the right to access the child's medical records as the child's personal representative," subject to one of a few "limited exceptions." *Id.*

87.    The exceptions "are generally limited to certain types of health care services, such as mental health care," where the parent may not be acting as the child's personal representative. *Id.* at 2.

88.    There are also potential exceptions when there are "state-specific limits on the right of a parent to access certain portion of a child's medical record," as well as situations where disclosure is permitted based on "an individualized, patient-specific professional determination by a health care provider" that the child may be subject to domestic violence, abuse, neglect or otherwise be in danger. *Id.* at 2.

89.    "Absent these limited exceptions, where a parent is the personal representative of his or her child, a covered entity (and, where applicable, its business associate acting on the covered entity's behalf) may not place additional limitations on a parent's access to the child's medical records beyond any existing limitations in applicable law." *Id.* at 2.

90.    To illustrate this rule, HHS provided the following scenario where "a parent cannot be denied access to his or her child's PHI:" "A patient is 13 years

17

old, and a state law requires parental consent for patients under 15 years old to receive health care in all cases. A covered health care provider cannot require authorization from that 13-year-old child before the provider will give the parent access to the child's PHI. The covered health care provider could not deny the parent access to that child's health care records by claiming that the 13-year-old child had not authorized parental access." *Id.* at 2-3.

91.    The Johnsons' OCR complaint remains open without resolution.

92.    After the Dear Colleague Letter was issued, the Johnsons again requested access from Fairview, but were again directed to Fairview's proxy access policy.

### The Johnsons Are Undergoing a Continuing Injury of Lack of Access Caused by Defendants

93.    There is a substantial controversy between Plaintiffs, Defendant Fairview Health and the State Defendants concerning whether Minnesota custom or law forbids disclosure of J.'s health records, whether HIPAA pre-empts Minnesota custom or law, and whether J.'s health records have been wrongly withheld pursuant to Minnesota custom or law.

94.    Plaintiffs and Defendants have adverse legal interests as Defendant Fairview Health has withheld J.'s electronic medical records through the MyChart portal.

95. Fairview Health has denied Plaintiffs' access to their daughter's medical records in reliance on Minnesota custom and law, despite contrary provisions of HIPAA. The State Defendants are charged with upholding and enforcing Minnesota law.

96. The State Defendants interpret Minnesota law in accord with Fairview Health, and likewise interpret state law to forbid disclosure of the PHI of a child over the age of 12 to her personal representative without the child's consent.

97. The State Defendants' interpretation of the Minnesota Health Records Act compels Defendant Fairview Health's policy, which forbids disclosure of PHI to personal representatives like the Johnsons.

98. Defendant Ellison, as Attorney General, has broad enforcement powers and can bring suit against covered entities under the Minnesota Health Records Act pursuant to Minn. Stat. § 8.31, subd. 1. *See Findling v. Grp. Health Plan, Inc.*, 998 N.W.2d 1, 8 (Minn. 2023).

99. Plaintiffs have objected to Fairview Health's policy and demanded access to J.'s MyChart medical records (with full PHI), but Fairview Health has denied access in reliance on Minnesota state law.

100. Plaintiffs' claims present purely legal questions that are not contingent on future possibilities, and are ripe for adjudication.

101.  Plaintiffs are suffering a continuing injury from Fairview Health's denying them access to J.'s medical records.

102.  Plaintiffs' deprivation of access to J.'s medical records was caused by Fairview Health's application of Minnesota custom and law, contrary to HIPAA.

103.  A declaration that Minnesota custom and law is preempted by HIPAA's Privacy Rule, and that Plaintiffs should have unlimited access to their children's PHI as their personal representatives, likely would resolve the controversy between Plaintiffs, Defendant Fairview Health, and the State Defendants. An injunction requiring Fairview Health to give Plaintiffs access to those MyChart medical records will remedy Plaintiffs' continuing injury.

104.  Alternatively, a declaration that Defendant Fairview's policy is contrary to Minnesota state law should resolve the controversy between Plaintiffs and Defendant Fairview Health. An injunction requiring Fairview Health to give Plaintiffs access to those records will remedy Plaintiffs' continuing injury.

**COUNT I – Plaintiffs v. Defendants**
**Federal Pre-emption**
**(U.S. Const. art. IV, cl. 2)**

105.  Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

106.  The Supremacy Clause preempts State law that is expressly preempted by or conflicts with a federal statute. U.S. Const. art. VI, cl. 2.

107.   A federal court has original jurisdiction to determine if state law is pre-empted by federal law under the Supremacy Clause. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *WinRed, Inc. v. Ellison*, 59 F.4th 934, 939 (8th Cir. 2023) (exercising jurisdiction over a claim that federal election law preempted Minnesota law).

108.   Even when federal law lacks a separate cause of action, federal courts still have jurisdiction over questions of pre-emption. *See Qwest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1266 (10th Cir. 2004) ("A federal statutory right or right of action is not required where a party seeks to enjoin the enforcement of a regulation on the grounds that the local ordinance is preempted by federal law."); *Wright Elec., Inc. v. Minnesota State Bd. of Elec.*, 322 F.3d 1025, 1028 (8th Cir. 2003) ("the district court had subject matter jurisdiction under 28 U.S.C. § 1331 because it was seeking declaratory and injunctive relief against state officials from enforcing a state statute on the ground that it was preempted by federal law, in violation of the Supremacy Clause of the United States Constitution").

109. To the extent that Minnesota custom or law prohibits giving the Johnsons access to their daughters' medical records, it is expressly pre-empted by HIPAA.

110. Alternatively, to the extent that Minnesota custom or law permits a health care provider to withhold these patient records to the Johnsons, it is expressly pre-empted by HIPAA.

111. Defendant Fairview asserts that "due to Minnesota confidentiality laws" full access to a child over 12's medical records will only be provided to parents with the minor's consent. **Exhibit A** at 1.

112. Defendant Fairview's official policy is consistent with this assertion. *See* **Exhibit B**.

113. Indeed, Defendant Fairview says, "[a]ccording to Minnesota law, children ages 12 to 17 have the right to decide who has access to their medical records related to pregnancy, STD, physical and sexual abuse, and substance abuse diagnosis and treatment. Parents or guardians will have partial, or limited, proxy access excluding these areas unless your child specifically agrees to grant you full proxy access." **Exhibit B**.

114. Minnesota's Health Records Act presumes that patient records are private unless an exception applies. *See* Minn. Stat. § 144.291 subd. 1; Minn. Stat. § 144.293 subd. 2.

22

115. The Health Records Act provides a right of access to parents equal to their child's, subject to limited exceptions. Minn. Stat. § 144.291 subd. 2(g).

116. None of the exceptions contemplated by Sections 144.341 to 144.347, apply to the Johnsons or to their right to access J. or L.'s medical records.

117. However, the Health Records Act does not provide an unlimited right of accessing the patient records; it only guarantees access within 30 days of a written request. *See* Minn. Stat. § 144.292 subd. 2.

118. Defendant Fairview's policy applies a presumption against providing full access to an older child's medical records pursuant to its reading of the Health Records Act.

119. The State Defendants interpret the Health Records Act consistent with Defendant Fairview Health, and interpret state law to permit Defendant Fairview Health's policy.

120. The State Defendants has consistently enforced the Health Records Act in accordance with this interpretation.

121. HIPAA creates a presumption that parents, as personal representatives, have the same, complete, access to their patient child's medical records. 45 C.F.R. § 164.502(g)(1).

122. HIPAA covers the entire medical record, in the same format in which it is kept. *See* 45 C.F.R. § 164.524(c)(2)(i).

23

123. None of the limited exceptions to HIPAA's presumption of access apply here, where the Johnsons are seeking access to records unrelated to the types of treatment enumerated as exceptions. *See* 45 C.F.R. § 164.502(g)(1).

124. HIPAA expressly pre-empts contrary state law to the extent it is impossible to comply with both the State and Federal requirements. *See* 42 U.S.C. § 1320d-7.

125. It is impossible to provide complete access to PHI by personal representatives pursuant to HIPAA and simultaneously provide incomplete access to them pursuant to the Health Records Act.

126. HIPAA's presumption of access for parents as personal representatives therefore pre-empts any contrary provision of Minnesota's Health Records Act that limits parent access to the minor's records.

127. Plaintiffs have been injured by Fairview Health's refusal to provide full access to J.'s medical records as J.'s medical condition requires frequent monitoring of the complete medical file.

128. Plaintiffs have been injured by the limited access given to them by Defendant Fairview Health, in compliance with the State Defendant's interpretation of the Health Records Act and state custom.

129. Plaintiffs injuries are irreparable—they cannot recover the lost time without access to their child's medical records—and every day that goes by

without access increases the risk that their child will suffer a serious medical incident. No damages could make them whole.

130. Plaintiffs are therefore entitled to a declaratory judgment and permanent injunction ordering that Minnesota's Health Records Act is pre-empted by HIPAA to the extent that Minnesota custom or law authorizes or requires limiting the Johnsons' access to their daughters' medical records.

**COUNT II – Plaintiffs v. Defendants**
**14th Amendment Right to Care, Custody and Management of Children**
**(U.S. Const. Amend. XIV sec. 1; 42 U.S.C. § 1983)**

131. Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

132. Substantive due process rights are rooted in the Fourteenth Amendment Due Process Clause which "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville,* 530 U.S. 57, 65 (2000).

133. "More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923), [the Court] held that the 'liberty' protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own.'" *Id.* at 66.

134. "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* at 65.

135. "It is beyond question that parents have a fundamental 'liberty interest' in the care, custody, and management of their children." *Zakrzewski v. Fox*, 87 F.3d 1011, 1013 (8th Cir. 1996) (citations omitted).

136. The Supreme Court has specifically recognized that within the broader parental right to raise children lies a narrower right to decide when a child needs health care. *See Parham v. J.R.*, 442 U.S. 584, 602 (1979).

137. Through its policy, and acting in reliance on Minnesota custom or law, Defendant Fairview Health has denied Plaintiffs access to their daughters' medical records.

138. Because it has acted in reliance on Minnesota custom or law in creating its access policy, and because it receives substantial federal funding, Defendant Fairview Health has acted under color of state law for purposes of Section 1983.

139. The State Defendants interpret Minnesota custom or law in accord with Defendant Fairview Health, and likewise deems disclosure of J.'s PHI to the Johnsons to violate state custom or statute.

140. Defendant Fairview Health was a willful participant in joint activity with the State Defendants in denying the Johnsons access to their daughters' medical records.

141. Defendant Fairview Health and the State Defendants have jointly applied Minnesota custom or law to deprive the Johnsons of fundamental and complete access to their daughters' medical records.

142. Withholding their daughters' electronic health information violates the Johnsons' 14th Amendment right to make informed decisions about their children's healthcare decisions.

143. Plaintiffs are therefore entitled to a declaratory judgment and permanent injunction ordering that the 14th Amendment requires providing the Johnsons' unrestricted access to their daughters' medical records, an award of nominal damages, and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT III – Plaintiffs v. Defendants**
**Violation of Minnesota Law**
**(Minn. Stat. § 8.31, subd. 1; Minn. Stat. § 144.292)**

144. Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

145. Each of the allegations in this claim for relief is pleaded in the alternative to other allegations contained in this Complaint pursuant to Fed. R. Civ. P. 8(d).

146. Minnesota law requires disclosure of the relevant medical records to the Johnsons.

147. The Minnesota Attorney General has broad enforcement authority concerning "violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn. Stat. § 8.31, subd. 1.

148. "Any person injured by a violation of any of the laws" enforceable by the Attorney General "may bring a civil action … and receive … equitable relief." Minn. State § 8.31, subd. 3a.

149. The Minnesota Health Records Act, Minn. Stat. § 144.292, is enforceable by private suit pursuant to Section 8.31. *Findling v. Grp. Health Plan, Inc.*, 998 N.W.2d 1, 8 (Minn. 2023).

150. "If a provider . . . fails, after a request, to provide patients with their information in a timely manner, the provider abuses its power over the patients and their information, acting inequitably and unfairly." *Id.* at 8.

151. The Health Records Act presumes that parents of minors have full access to their children's medical records. Minn. Stat. § 144.291 subd. 2(g).

152. The Health Records Act only limits disclosure for specific treatment or reasons related to the health and safety of the minor. *See* Minn. Stat. §§ 144.341-144.347.

153. None of the limited exceptions to disclosure apply here, as J.'s treatment is unrelated to any of the enumerated exceptions. *See id.*

154. Minnesota law therefore requires providing the Johnsons with full and unencumbered access to J. and L.'s medical files.

155. Minnesota also incorporates by reference disclosures required by HIPAA's Privacy Rule. *Schneider v. Children's Health Care*, 996 N.W.2d 197, 206 (Minn. 2023).

156. Because HIPAA's provisions governing release of information to a parent as personal representative are incorporated into Minnesota's Health Records Act as "authorized by law," Fairview's policy is also inconsistent with Minnesota law.

157. Plaintiffs are therefore entitled to a declaratory judgment and permanent injunction ordering that the Minnesota Health Records Act requires providing the Johnsons' unrestricted access to their daughters' medical records.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that the Court:

A. Issue declaratory and permanent injunctive relief, pursuant to 28 U.S.C. §§ 2201–02 and the Court's equitable authority, declaring that the Minnesota Health Records Act is preempted by HIPAA's

Privacy Rule, and ordering the release of the relevant records to the Johnsons.

B.    Issue declaratory judgment and a permanent injunction pursuant to 42 U.S.C. § 1983, declaring that the 14th Amendment requires providing the Johnsons' unrestricted access to their daughters' medical records, ordering the release of the relevant records to the Johnsons, and awarding nominal damages and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

C.    In the alternative, issue declaratory and permanent injunctive relief declaring that the Minnesota Health Records Act requires disclosure of the relevant records to the Johnsons and ordering the release of the relevant records to the Johnsons.

D.    Award Plaintiffs their reasonable costs, including attorneys' fees, for bringing the action, pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1988, and any other applicable authority; and

E.    Grant other legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

ECKLAND & BLANDO LLP

Dated: May 29, 2026

/s/ *Thomas L. Harshaw*
Robert T. Dube Jr. (#401597)
Thomas L. Harshaw (#0403600)
100 WASHINGTON AVENUE
SUITE 1500
Minneapolis, MN 55401
(612) 236-0160
rdube@ecklandblando.com
tharshaw@ecklandblando.com


/s/ *Caleb Kruckenberg*
Caleb Kruckenberg**\***
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW
Suite 625
Washington, DC 20036
(202) 833-8400
kruckenberg@cir-usa.org

*Motion for admission *pro hac vice*
forthcoming

*Attorneys for Plaintiffs*

31