UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shaun A. Johnson,
Katherine E. Johnson,

      Plaintiffs,

      v.

Keith Ellison, in his official
capacity as Attorney General for
the State of Minnesota, Brooke
Cunningham, M.D., in her official
capacity as Commissioner of the
Minnesota Department of Health,
and Fairview Health Services, d/b/a
M Health Fairview,

      Defendants.

Civil File No. 26-cv-02795 (PJS/EMB)

**MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Shaun A. Johnson and Katherine E. Johnson bring this action against Fairview Health Services, d/b/a M Health Fairview ("Fairview") alleging concerns with Fairview's policy for parental access to a minor's electronic medical records.  Plaintiffs also sue Keith Ellison, Attorney General for the State of Minnesota, and Brooke Cunningham, M.D., Commissioner of the Minnesota Department of Health, in their official capacities ("State Defendants").  Plaintiffs allege—without factual support—that the State Defendants' interpretation and enforcement of the Minnesota Health Records Act, Minn. Stat. §§ 144.291-.298 ("the Act"), is consistent with Fairview's policy and conflicts with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Plaintiffs' allegations are legally and factually insufficient.  Not only do Plaintiffs lack standing to

sue the State Defendants, but they also fail to state a claim under Rule 12(b)(6). The claims against the State Defendants thus must be dismissed.

## ALLEGED FACTS

Plaintiffs assert that Fairview prevents them from having unrestricted access to their 15-year-old child's MyChart electronic medical records portal, in violation of the Act, HIPAA, the Supremacy Clause, the Fourteenth Amendment, or some combination of the four. (Doc. 1 at ¶¶ 1-4.) According to Plaintiffs, Fairview removed Plaintiffs' access to their child's Fairview MyChart after her twelfth birthday and required them to submit a "MyChart Proxy Access Request Form" ("Form") to restore their access. (*Id*. at ¶¶ 27-30, 41; Doc. 1-1.) Plaintiffs allege that pursuant to its policy, Fairview will not grant them "full proxy access" to view all records in their child's Fairview MyChart unless the child consents to give them full access. (Doc. 1 at 30-31, 38; Doc. 1-1; Doc. 1-2.) Plaintiffs claim that, without their child's consent, they will only have "limited proxy access," which does not allow them to see the complete records available through the Fairview MyChart portal. (Doc. 1 at 30-31, 38; Doc. 1-1; Doc. 1-2.) Plaintiffs assert they declined to complete the Form and as such cannot access their child's Fairview MyChart portal. (Doc. 1 at ¶¶ 32-35.) Although they do not have Fairview MyChart portal access, Plaintiffs allegedly requested and were provided with PDF copies of their child's medical records from Fairview, apart from some records or images which can only be viewed in electronic form. (*Id*. at ¶¶ 45-52.)

In addition to their claims against Fairview, Plaintiffs bring official capacity claims against Attorney General Ellison and Commissioner Cunningham.  (Doc. 1 at ¶¶ 10-11.) Plaintiffs assert that the Attorney General and Commissioner Cunningham have authority to enforce the Act and that they "interpret [the Act] consistent with Defendant Fairview Health and interpret state law to permit Defendant Fairview Health's policy."  (Doc. 1 at ¶¶ 9-11, 119-120.)[1]  Plaintiffs offer no factual allegations to support their assertion about the State Defendants' interpretation of the Act.  (*See id*.)

Plaintiffs seek multiple forms of relief.  First, they ask this Court for a declaration that the Act is preempted by HIPAA's Privacy Rule.  (*Id*. at pp. 29-30.)  They also seek a declaration that "the 14th Amendment requires providing [Plaintiffs] with unrestricted access" to their child's medical records, or, in the alternative, that the Act "requires disclosure of the relevant records" to Plaintiffs.  (*Id*. at p. 30.)  Plaintiffs also seek a permanent injunction ordering the "release of the relevant records[,]" as well as nominal damages, costs, and attorneys' fees.  (*Id*. at p. 30.)

## ARGUMENT

### I.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim requires a court to determine whether a complaint plausibly establishes "that the pleader is entitled to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2)).  In determining whether

---

[1] Plaintiffs also assert that Attorney General Ellison, as a Defendant, "is responsible for upholding the validity of Minnesota state law when it is challenged, such as through pre-emption."  (Doc. 1 at ¶10.)

a complaint plausibly sets forth grounds for relief, the Court must accept all of plaintiff's factual allegations as true and consider these allegations in the light most favorable to plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court need not, however, accept as true legal conclusions couched as factual allegations. *Id.* "A pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (internal quotations omitted).

A party may also move to dismiss a complaint if the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3); *see also Benter v. U.S. Soc. § Admin. Field Off. – Bemidji*, No. 14-130, 2014 WL 5307634, at *2 (D. Minn. Oct. 16, 2014) ("Jurisdiction is a threshold issue, and 'judicial economy demands that the issue be decided at the outset' of the case.") (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)).

## II. THE COURT LACKS JURISDICTION OVER THE STATE DEFENDANTS BECAUSE THERE IS NO ARTICLE III CASE OR CONTROVERSY AND PLAINTIFFS' CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.

Article III of the United States Constitution only grants federal courts authority to adjudicate "Cases" and "Controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must demonstrate an "injury in fact" that is fairly traceable to

the actions of a defendant, and it must be likely that the injury will be redressed by a favorable decision. *Id.* Plaintiffs must establish standing for each claim they bring against each defendant and for each form of relief they seek. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

Under the Eleventh Amendment, a plaintiff may not sue a state in federal court unless the state consents to the suit or Congress abrogates the state's sovereign immunity. *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004). The immunity extends to state agencies and to official-capacity claims against state employees. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Federal courts must dismiss actions barred by the Eleventh Amendment. *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 64-65, 73 (1996).

In *Ex parte Young*, the Supreme Court established a limited exception to this immunity. Under the *Ex parte Young* doctrine, "a private party can sue a state officer in their official capacity to enjoin a prospective action that would violate federal law." *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). For the *Ex parte Young* exception to apply, a plaintiff must allege an "ongoing violation of federal law" and seek "relief properly characterized as prospective." *Id.* (citation omitted).

Accordingly, to assert a claim against a state officer under *Ex parte Young*, a plaintiff must allege that: (1) the official has "some connection with the enforcement" of the challenged law; and (2) the official threatens and is "about to commence proceedings" to enforce the law. 209 U.S. 123, 156–57 (1908). "The *Ex parte Young* exception does

not apply when the defendant official has neither enforced nor threatened to enforce the statute challenged as unconstitutional." *281 Care Comm*, 766 F.3d at 797 (quotations and citation omitted).

The questions of Article III jurisdiction and Eleventh Amendment immunity are related and turn on whether state officials have "some connection with the enforcement" of a statute under the *Ex parte Young* doctrine. *Digit. Recognition Network, Inc. v. Hutchinson,* 803 F.3d 952, 957 (8th Cir. 2015) (holding that the case or controversy requirement of Article III is satisfied if the connection requirement under *Ex parte Young* is satisfied). Thus, the question here is whether the State Defendants have "some connection" to the enforcement of the Act. If they do not, the State Defendants are immune from suit under the Eleventh Amendment and there is no case or controversy as to the State Defendants under Article III.

### A. Plaintiffs Have Not Alleged an Ongoing Violation of Law Attributable to the Attorney General or the Commissioner.

Plaintiffs have failed to assert a viable *Ex parte Young* claim against the Attorney General or the Commissioner because they have not alleged an ongoing violation of federal law attributable to either. The purpose of the *Ex parte Young* exception is to "prevent[] state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). But here, the violation of law claimed by Plaintiffs—denial of access to their child's MyChart portal—is traceable to Fairview's alleged conduct, not the State Defendants. Plaintiffs do not allege that the Attorney General or the Commissioner have taken any illegal or unconstitutional enforcement action

6

(or threatened such action) against them.  And neither the Attorney General nor the Commissioner is the proper party for the injunctive relief Plaintiffs seek.  Plaintiffs request injunctive relief in the form of an order to "release the relevant records."  It would be impossible for the Attorney General or the Commissioner to comply with such an order because they do not possess the records at issue—Fairview does.  *See Northland Baptist Church of St. Paul v. Walz*, 530 F. Supp. 3d 790, 803 (D. Minn. 2021), *aff'd sub nom. Glow in One Mini Golf, LLC v. Walz*, 37 F.4th 1365 (8th Cir. 2022) ("At the motion-to-dismiss stage, a federal court need only consider whether a plaintiff has plausibly identified a potentially proper party for injunctive relief.") (citation omitted).  Because there is no "ongoing violation of law" traceable to the Attorney General or the Commissioner, Plaintiffs do not have viable claims against the State Defendants. The Commissioner and the Attorney General are immune from suit, and Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction.

**B.     The Commissioner Lacks a Sufficient Connection with Enforcement of the Act.**

Plaintiffs have not pleaded any connection between Commissioner Cunningham and enforcement of the Act, besides a vague and unsupported allegation that she is responsible for administering and enforcing the Act.

Although Commissioner Cunningham has authority to enforce various Minnesota laws involving public health, the Act does not explicitly assign any enforcement authority to the Commissioner.  *Cf.* Minn. Stat. §§ 144.291-144.34 *with* Minn. Stat. § 144.99, subd. 1 (identifying several laws enforceable by the Commissioner under the Minnesota Health

7

Enforcement Consolidation Act of 1993, including laws relating to the regulation of wells, restaurants, sanitation systems, radioactive material, water pollution, lead abatement, and asbestos and other matters of public health, but not including the Act).  The only references to the Commissioner in the Act relate to non-enforcement responsibilities, including an obligation to develop a template notice of rights with respect to access to health records (under Minnesota Statutes section 144.292, subdivision 4) and a form that a patient may use to request access to health records (under Minnesota Statutes section 144.292, subdivision 8).

The Act does not provide an explicit grant of enforcement authority to the Commissioner, and the regulatory framework surrounding disciplinary actions against providers who violate the Act confirms that such broad enforcement authority was never intended.  For example, section 144.298, subdivision 1, states that a violation of the Act may be grounds for disciplinary action against a provider by the "appropriate licensing board or agency."  But the Commissioner only has licensing authority over certain types of health care facilities or health insurance plans. *See, e.g., Findling v. Grp. Health Plan, Inc.*, 979 N.W.2d 234, 237 (Minn. Ct. App. 2022), *aff'd in part, rev'd in part*, 998 N.W.2d 1 (Minn. 2023) (noting that the Commissioner may have enforcement authority over hospitals and health maintenance organizations but that the Minnesota Board of Medical Practice or specific licensing boards have authority over physicians and other providers).

Moreover, it is not clear that the reference to "disciplinary action" in section 144.298, subdivision 1, applies to the Commissioner's enforcement authority against

regulated facilities or entities, given that the term "discipline" or "disciplinary action" is not used in reference to such authority. *Cf.* Minn. Stat. §§ 144.55, 144A.10, 144G.20, 144G.30 (describing actions the Commissioner may take against the license of a hospital or outpatient surgical center, nursing home, or assisted living facility) *with* Minn. Stat. § 147.091, 148.261, 151.071 (describing grounds for "disciplinary action" by the relevant health occupation licensing board against individual physicians, nurses, and pharmacists).

The Minnesota legislature has determined that specific health licensing boards, and not the Commissioner, are the most appropriate entities to license and exercise disciplinary authority for certain occupations. *See* Minn. Stat. § 214.001, subd. 1 (noting that it is desirable for boards comprised of members of a certain occupation to be charged with formulating policies and standards governing that occupation); *see also Padilla v. Minn. State Bd. of Med. Exam'rs*, 382 N.W.2d 876, 886 (Minn. Ct. App. 1986) (noting that the legislature tasked the Minnesota State Board of Medical Examiners, and not administrative law judges, with discretion to determine appropriate discipline based on the special expertise of board members regarding the standards of their own professions).

While the Commissioner may regulate individual health care facilities that are within her licensing purview, she does not possess regulatory authority over large-scale healthcare systems or nonprofit corporations like M Health Fairview or Fairview Health Services. *See* Minn. Stat. §§ 144.50-144.591. The Commissioner likewise has no authority to enforce the Act against private parties like the Plaintiffs. *See, e.g.*, Minn. Stat. § 144.298,

subd. 2 (describing liability to a patient of an "other person who, for instance, "forges a signature on a consent form").

Because the Commissioner lacks the type of connection to the Act's enforcement required to satisfy *Ex parte Young*'s first element, there is no case or controversy for the Court to address as to the Commissioner and dismissal is required.

### C.      The Attorney General Lacks a Sufficient Connection to Enforcement of the Act.

Just as the Act offers no clear enforcement authority for Commissioner Cunningham, it likewise includes no explicit grant of such authority to Attorney General Ellison.  Rather, Plaintiffs appear to rely on *Findling v. Group Health Plan, Inc.*, a case in which the Minnesota Supreme Court concluded that Minnesota Statutes section 8.31, subdivision 3a, granted a private right of action regarding the untimely disclosure of health records, in violation of section 144.292, subdivision 5.  998 N.W.2d 1, 7 (Minn. 2023).

Notably and contrary to Plaintiffs' argument, *Findling* did not conclude that the Attorney General had general enforcement authority over the entire Act.  Instead, *Findling* offered the limited holding that a patient has a private right of action regarding the untimely disclosure of health records, in violation of section 144.292, subdivision 5, because that provision of the Act falls under section 8.31, subdivision 1, as "a law respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade that the Attorney General may investigate and enforce."  *Id.* (explaining that any person injured by a law enforceable by the Attorney General in section 8.31, subdivision 1, may bring a direct civil action under subdivision 3a).

Beyond the conclusory statement that the Attorney General has "broad enforcement powers and can bring suit against covered entities" under the Act pursuant to section 8.31, subdivision 1, Plaintiffs fail to specify which provision of the Act the Attorney General is enforcing, or about to enforce, that violates a federal law.  Courts have routinely held that plaintiffs cannot rely on an attorney general's general power to uphold the law writ large and must instead explicitly identify the attorney general's authority to enforce a specific law.  *See, e.g.*, *Whole Woman's Health*, 595 U.S. at 43-44 (rejecting injunctive relief against the Texas attorney general because petitioners failed "to direct this Court to any enforcement authority the attorney general possesses" in connection with the challenged state statute); *Digit. Recognition Network, Inc.*, 803 F.3d at 960-64 (rejecting argument that the "broad power" of the Arkansas attorney general to enforce the state constitution and statutes created a sufficient connection with the act to permit suit under *Ex parte Young*); *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (Missouri attorney general's general law enforcement authority was too "tangential" a connection to vehicle inspection statute); *281 Care Comm*, 638 F.3d at 632 ("[U]nder *Ex parte Young*, a state attorney general cannot be sued merely as a representative of the state itself.") (citation omitted).

Even if the Attorney General *could* enforce certain provisions of the Act, that does not mean the Attorney General is *about* to commence suit against Plaintiffs as is required to establish the narrow *Ex parte Young* exception.  "[S]ome duty in regard to the enforcement is not enough: *Ex parte Young* also requires the officer to threaten and [be] about to commence proceedings."  *Minn. Chapter of Associated Builders & Contractors v.*

11

*Ellison*, 153 F.4th 695, 702 (8th Cir. 2025) (quotations and citations omitted).  This second element of the limited *Ex parte Young* exception prevents federal courts from needing to "determine the constitutionality of state laws in hypothetical situations where it is not even clear the State itself would consider its law applicable."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992).

Although the Minnesota Supreme Court determined that the Attorney General's broad enforcement authority covered violations of section 144.292, subdivision 5, Plaintiffs have not identified (and the State Defendants are not aware of) a single instance where the Attorney General has attempted to exercise that authority, in relation to this case or any other.  Nor have they identified any threat from any of the State Defendants to enforce any part of the Act.

Rather than identify any instance of imminent enforcement of any provision of the Act by the Attorney General, Plaintiffs appear to conversely argue that the Court should issue a mandatory injunction requiring the Attorney General to enforce the Act, as Plaintiffs interpret it, against Fairview.  (*See, e.g.,* Doc. 1 ¶¶ 58, 157.)  This underscores that Plaintiffs do not allege an imminent intent to enforce the Act by the Attorney General. The failure to identify any present intention by the Attorney General to enforce the Act, and in a way that violates federal law, renders the Attorney General immune from suit and divests this Court of jurisdiction.  Furthermore, any injury experienced by Plaintiffs is not traceable to the Attorney General and would not be redressable by a favorable decision

12

against the Attorney General, meaning there is no case or controversy for the Court to address as to the Attorney General.

## III.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.

Even if the limited *Ex parte Young* exception were to apply, Plaintiffs' claims still would fail as a matter of law.  Plaintiffs fail to state a claim upon which relief can be granted.  Plaintiffs also fail to allege facts that show the State Defendants had the requisite personal involvement needed under Section 1983.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allow defendants to assert, as a defense to a claim that a plaintiff "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains sufficient factual allegations, taken as true, to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.  Plaintiffs do not allege facts that state plausible claims for relief against the State Defendants.

### A.    The complaint failed to state a valid preemption argument.[2]

Plaintiffs allege that the Act is preempted by HIPAA under the theory of conflict preemption.  Conflict preemption occurs when it is impossible to comply with both the federal and state law, or when the state law "stands as an obstacle to the accomplishment

---

[2] To the extent that Plaintiffs allege claims against the Attorney General and the Commissioner for violating the Act, such claims are impermissible and must be dismissed. *Pennhurst State Sch.*, 465 U.S. at 106 (holding that the *Ex parte Young* exception is inapplicable in a suit brought in federal court against state officials on the basis of state law because "[a] federal court's grant of relief against state officials on the basis of state law… does not vindicate the supreme authority of federal law.").

and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). If the purpose of the federal law cannot be accomplished because of the state law, the state law must yield to the federal law. *Id*. (citing *Savage v. Jones*, 225 U.S. 501, 533 (1912)).

Here, Plaintiffs allege that it is impossible to provide complete access to private health information under HIPAA while restricting access to private health information pursuant to the Act. But the Act's requirements for disclosure of medical records do not conflict with HIPAA. Under HIPAA's Privacy Rule, an individual or a personal representative acting on the individual's behalf must be allowed access to the individual's medical records for as long as the records are maintained in the designated record set. 45 C.F.R. § 164.524(a)(1). The Privacy Rule further provides that if, *under applicable law*, a parent or guardian has legal authority to make a minor's health-care decisions, a covered entity must treat that person as the minor's personal representative with regard to relevant medical records. 45 C.F.R. § 164.502(g)(3)(i) (emphasis added). The minor, not the parent, is treated as the decision-maker for health information relating to a particular health-care service, if the minor is legally allowed to obtain that service without a parent's consent. *Id.*, § 164.502(g)(3)(i)(A). The Privacy Rule thus expressly allows other applicable law, such as state law, to determine under which situations a minor patient may make health-care decisions for themselves and under which situations a parent has legal authority to make health-care decisions on behalf of a minor. "Whether a parent is their

14

child's personal representative under HIPAA depends, in part, on the laws of the state. Additionally, state law may limit a parent's rights as a child's personal representative, *including state-specific limits on the right of a parent to access certain portions of a child's medical records*." DEP'T OF HEALTH AND HUM. SERV., *Re: The HIPAA Privacy Rule and Parental Access to Minor Children's Medical Records* (Dec. 3, 2025) (attached to Complaint as Doc. 1-5, p. 2.) (emphasis added).

Consistent with HIPAA, the Act defines "patient" in the case of a minor to include a parent or guardian, with specified exceptions in cases where minors can make their own medical decisions without additional consent. Minn. Stat. § 144.291, subd. 2(g). These exceptions include when a minor lives independently from their parent or legal guardian and manages their own financial affairs, or when a minor has been married or borne a child. Minn. Stat. §§ 144.341-342. Additionally, a minor can consent to their own medical and mental health services related to pregnancy, sexually transmitted diseases, alcohol or drug use, or a hepatitis B vaccination without additional consent. Minn. Stat. §§ 144.343, 144.3441. A minor who is 16 or older may give consent for nonresidential mental health services without additional consent. Minn. Stat. § 144.344. Health services may also be rendered to a minor without the consent of their parent or guardian when the health professional believes the risk to the minor's life or health is of such a nature that the requirement of additional consent would result in delay or denial of treatment. Minn. Stat. § 144.344.

While the general rule is that HIPAA preempts any contrary state law, HIPAA does not preempt a state law which is "more stringent" than the provisions of HIPAA. 45 C.F.R. § 160.203. "More stringent" means the law "provides greater privacy protection for the individual who is the subject of the individually identifiable health information" than the standard in the regulation. 45 C.F.R. § 160.202(6).

In this case, Plaintiffs allege concerns with the sufficiency of the minor medical records produced to them, but Plaintiffs fail to allege which provision of the Act conflicts with HIPAA's Privacy Rule, arguing instead that the entirety of the Act is preempted by HIPAA's Privacy Rule. (Doc. 1, p. 30-31.) Contrary to Plaintiffs' arguments, HIPAA expressly acknowledges that state law may carve out exceptions limiting a parent's right to access a minor's medical records. 45 C.F.R. § 164.502(g)(3). Furthermore, to the extent a conflict exists, HIPAA is not preempted by the Act because the Act provides more stringent privacy protections for the minor subject of the health information who withholds consent for their parent or guardian to access the minor's records under certain conditions. *See, e.g., Citizens for Health v. Leavitt,* 428 F.3d 167, 174 (3d Cir. 2005) (holding that HIPAA's Privacy Rule is a "federal floor" for privacy protection, allowing state law to control when the state law is more stringent than the requirements under the Privacy Rule).

**B.     The complaint failed to state a valid Fourteenth Amendment claim.**

To the extent that Plaintiffs bring a substantive due process claim, it also fails. A plaintiff raising a substantive due process claim has the burden of demonstrating that the government action in question infringes upon a fundamental right and is so severe as to

16

shock the conscience. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181–82 (8th Cir. 2003). Fundamental rights are those "deeply rooted in this Nation's history and tradition," such as marriage, childbearing, or directing a child's upbringing. *Washington v. Glucksberg*, 521 U.S. 702, 703, 720 (1997). Fundamental rights are therefore limited, and courts are reluctant to expand the concept of substantive due process. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). When claiming a substantive due process violation, the claimed right must be described with specificity and overgeneralization must be avoided. *Washington*, 521 U.S. at 720-23. Here, besides their general statement that parents have a fundamental right to parent and care for their children, Plaintiffs fail to allege how the State Defendants have interfered in any manner with that right. But even if Plaintiffs did adequately allege an implicated fundamental right, they must also allege facts showing conduct so severe that it shocks the conscience. *Lewis*, 523 U.S. at 846-47; *Slusarchuk*, 346 F.3d at 1181-82. Plaintiffs must plead allegations that could establish that the conduct was "truly irrational," "something more than . . .arbitrary, capricious, or in violation of state law." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010). Moreover, even conscience-shocking conduct requires an allegation of facts showing that the defendants acted with the requisite intent or at a minimum, deliberate indifference, which depends on the circumstances. *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005). Plaintiffs allege neither. The theory of substantive due process is reserved for truly egregious cases. *Sitzes v. City of West Memphis Ark.*, 606 F.3d 461, 467 (8th Cir. 2010). In this case, Plaintiffs fail to allege any

17

conduct that can be attributed to the State Defendants, let alone conduct that shocks the conscience or that the State Defendants acted with deliberate indifference.

## IV. PLAINTIFFS CANNOT MAINTAIN THEIR CLAIM FOR DAMAGES AGAINST THE STATE DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

To the extent Plaintiffs seek nominal monetary damages against the State Defendants in their official capacities, Plaintiffs' claims must be dismissed. The Eleventh Amendment bars such suits, and neither Congress nor Minnesota has waived sovereign immunity for Section 1983 claims. *Kentucky*, 473 U.S. at 165-66; *Pennhurst State Sch.*, 465 U.S. at 100; *Seminole Tribe*, 517 U.S. at 64-65, 73.

Similarly, States and state officials acting in their official capacities are not "persons" under Section 1983, so Plaintiffs cannot pursue damages under that statute. 42 U.S.C. § 1983; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiffs cannot prevail on these claims.

## CONCLUSION

For these reasons, the State Defendants respectfully request that the Court dismiss all claims against them with prejudice.

Dated: July 1, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


*s/ Kaitrin C. Vohs*
KAITRIN C. VOHS
Assistant Attorney General
Atty. Reg. No. 0397725
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651) 728-7088 (Voice)
(651) 297-4139 (Fax)
kaitrin.vohs@ag.state.mn.us

MADELINE M. SHEEHY
Assistant Attorney General
Atty. Reg. No. 0402827
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651) 757-1483 (Voice)
(651) 297-4139 (Fax)
madeline.sheehy@ag.state.mn.us


ATTORNEYS FOR STATE DEFENDANTS

|#6391378-v1

19